# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON, WEST VIRGINIA

**JM a minor**
**by and through TANYA LARDIERI,**
**his Parent and Next Friend**

       Plaintiff,

v.

**LOGAN COUNTY BOARD OF EDUCATION,**
by and through its School Board Members in their
Official Capacity, including,

**Phyllis Adkins**, President, at the time of incident
Logan County Board of Education Member
In her Official Capacity,
419 Justice Circle
Logan, WV 25601

**William Davis**, Vice President, at the time of incident
Logan County Board of Education Member
In his Official Capacity,
PO Box 51
Chapmanville, WV 25508

**Mark McGrew**, Current President
Logan County Board of Education Member
In his Official Capacity,
PO Box 198
Holden, WV 25625

**Dr.  Pat J.  White**,
Logan County Board of Education Member
In his Official Capacity,
501 East McDonald Avenue
Man, WV 25635

**James Frye**,
Logan County Board of Education Member
In his Official Capacity,
159 Nighbert Avenue
Logan, WV 25601

2:15-cv-04822

and

**Wilma Zigmond,**
both in her Individual Capacity and in her
Official Capacity, as Superintendent
of the Logan County Board of Education,
103 Central Avenue Logan, WV 25601

**Ernestine Sutherland,**
both in her Individual Capacity and in her
Official Capacity as Principal of Logan
Middle School,
92 Buskirk Addition
Logan, WV 25601

**David L.  Burroway,**
both in his Individual Capacity and in his
Official Capacity as Teacher at Logan
Middle School,
285 Ridgeview Terrace
Chapmanville, WV 25508

**Howard Rockhold,**
both in his Individual Capacity and in his
Official Capacity as Teacher at Logan
Middle School
207 Hillcrest Drive
Logan, WV 25601

**Anita Gore**
both in her Individual Capacity and in her
Official Capacity as Secretary at Logan
Middle School

**Christopher Marcus**
both in his Individual Capacity and in his
Official Capacity as Teacher at Logan
Middle School
PO Box 404
Man, WV 25635

**Logan Middle School**
Ernestine Sutherland, Principal
14 Widlcat Way
Logan, WV 25601

      Jointly and Severally, Defendants.

## COMPLAINT

      COMES NOW the Plaintiff, JM, by and through his Parent and Next Friend and attorney(s), and complains against the Defendants, jointly and severally as follows:

## INTRODUCTION

      The Plaintiff, JM, brings this action against the individually named Logan Middle School, Principal (both individually and in their official capacities) and the Logan County Board of Education's School Superintendent, Teachers, etc., (both individually and in their official capacities), and Logan County Board of Education and its members in their official capacities. The Plaintiff brings this action against these Defendants based upon their direct involvement and/or involvement in supporting, condoning and ratifying the actions, contained herein, of the employees at Logan Middle School.  This suit is brought pursuant to 42 U.S.C. §1983 for the deprivation, under color of law, of the Constitutional rights and freedoms secured to Plaintiff under the Constitution of the United States.  Claims are also being brought for pendent state constitutional law violations, punitive damages and the recovery of costs and attorney fees to 42 U.S.C. §1988.

## SUMMARY OF SIGNIFICANT FACTS

On or about April 18, 2013, Plaintiff, JM, an NRA Member, sportsman and 14-year-old eighth grader, wore an NRA (National Rifle Association of America) Pro Second Amendment t-shirt to Logan Middle School where the Plaintiff was enrolled as a student.   The shirt was an un-alarming olive green tee shirt bearing the NRA logo, which is the letters "NRA" in black, the words "PROTECT YOUR RIGHT", an image of a hunting rifle and the Official NRA Logo which has an Eagle and two crossed firearms along with the words "National Rifle Association of America" and the words "Incorporated 1871", in a lawful, non-violent exercise of State and Federal Constitutional Rights to keep and bear arms.   The shirt comported with the written dress code policy of the Logan County Board of Education and further comported with the Logan Middle School's Student/Parent Handbook of policies in effect at the time.

While waiting in the lunch line in the Logan Middle School cafeteria, JM was physically stopped by Logan Middle School Secretary, Ms. Anita Gore, who placed her hand on JM's chest, stopping him from proceeding further, advising JM that his NRA logo-ed t-shirt violated the school dress code and instructed JM to turn the NRA Pro Second Amendment shirt inside out concealing the NRA logo or face suspension from school.   Ms. Gore then summoned Mr. David Burroway to view JM's NRA Pro Second Amendment shirt, stating to Mr. Burroway that the shirt was in violation of the Logan County Board of Education's Dress Code.   At this point, Mr. Burroway agreed that the shirt violated the Logan County Board of Education's Dress Code and ordered JM to either remove the shirt, turn it inside out or be suspended from Logan Middle School.  This order was witnessed by Mr. Howard Rockhold, a fellow teacher/educator at Logan Middle School.   Mr. Rockhold then grabbed JM's left arm and escorted JM to the Principal's office.   These actions, by Defendants, are in violation of JM's **State and Federal right to**

**freedom of speech, expression and association.**   Under threat of suspension, JM was forced from the Logan Middle School Cafeteria and into the Principal's office to face disciplinary action.  Such activity occurred despite the fact the shirt complies fully with the written dress code of the Logan County Board of Education and the written dress code rules of Logan Middle School, as set forth in the 2012–2013 Student/Parent Handbook.   The shirt does not display an image, message or logo which is threatening, violent, illegal, inappropriate or in any way disruptive to pedagogical concerns or the school.   This matter did not in any way, shape or form involve the possession, use of or threatened use of a firearm, only the display of a logo containing a hunting rifle.  The actions of the secretary, teachers and Principal in singling JM out and censoring his speech, expression and association related to his wearing of an NRA Logo tee shirt, based upon personal political views, and in such a manner that violated written disciplinary policies and procedures of the school and further violated and continues to chill the First Amendment Constitutional Rights of JM and serves as the basis for this Civil Rights Action. The events and actions between  Defendants Burroway and Gore were captured on a video cell phone by a Logan Middle School student.  However, Defendant Marcus ordered the student to delete the video upon which Defendant Marcus ensured the video was in fact deleted. Efforts to resolve this, short of the need to file costly or protracted litigation, have gone un-responded by the Defendants.

1.   The rights violated in the instant case are secured to JM by the First and Fourteenth Amendments to the United States Constitution; the West Virginia Constitution, Article 3, Section 7; 42 U.S.C. §1983, 42 U.S.C. §1988 and the common law.

2.   The Plaintiff, JM, by and through his Mother and Next Friend, Tanya Lardieri, is a citizen of the State of West Virginia.

3.  Each Defendant was, upon information and belief, a citizen of the State of West Virginia at or about the time of the incident.

4.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331, §1343(a)(3) and 42 U.S.C. §1983 and §1988.

5.  JM also invokes the pendent jurisdiction of this Court over JM's state (West Virginia) claims against defendants for the common law violations pursuant to 28 U.SC. §1367 as the common law claims form part of the same case and controversy.

6.  Venue is proper in this District pursuant to 28 U.S.C. §1391(b).


## PARTIES

7.  JM reincorporates allegations 1- 6 as though fully set forth herein.

8.  The Plaintiff, JM, and his Mother, Tanya Lardieri, Next Friend herein, currently reside at 314 Second Avenue, West Logan, WV 25601.

9.  JM is a student in the Logan County Public School System, specifically, he is now a student at Logan High School, located at 1 Wildcat Way, Logan, WV 25601.

10. JM is a member of the National Rifle Association of America (hereafter referred to as the "NRA").

11. The National Rifle Association of America is the oldest sportsman and civil rights association in America.  It was founded in 1871.  In that last 143 years the NRA has grown into a well established, politically active and well recognized civil rights organization with over four million members dedicated to the advocacy and preservation of the federal and state constitutional rights to keep and bear arms for all lawful purposes. The NRA's membership has included at least eight United States

Presidents, two United States Vice Presidents, two Chief Justices of the United States Supreme Court and numerous Senators and Congressmen, as well as legislators and officials of state governments and citizens from all walks of life, throughout the nation.

12.   The National Rifle Association of America's initials (NRA) have become a well recognized and synonymous symbol associated with the political fight to preserve and protect the Federal and State Constitutional rights of citizens to keep and bear arms.

13.   The NRA does not promote or advocate violence nor do any of its logos or fraternal merchandise depict images of threats, violence or illegal and improper firearm usage.

14.   The Bylaws of the National Rifle Association of America state the Association's purpose and its objectives are:

   a.  To protect and defend the Constitution of the United States, especially with reference to the inalienable right of the individual American citizen guaranteed by such Constitution to acquire, possess, collect, exhibit, transport, carry, transfer ownership of, and enjoy the right to use arms, in order that the people may always be in a position to exercise their legitimate individual rights of self-preservation and defense of family, person, and property, as well as to serve effectively in the appropriate militia for the common defense of the Republic and the individual liberty of its citizens;

   b.  To promote public safety, law and order, and the national defense;

c. To train members of law enforcement agencies, the armed forces, the militia, and people of good repute in marksmanship and in the safe handling and efficient use of small arms;

d. To foster and promote the shooting sports, including the advancement of amateur competitions in marksmanship at the local, state, regional, national and international levels;

e. To promote hunter safety, and to promote and defend hunting as a shooting sport and as a viable and necessary method of fostering the propagation, growth and conservation, and wise use of our renewable wildlife resources.

The Association may take all actions necessary and proper in the furtherance of these purposes and objectives.

15. The Logan County Board of Education is located in Logan County, West Virginia and is within the jurisdiction of the United States District Court for the Southern District of West Virginia.

16. Logan Middle School is a public middle school governed by the Logan County Board of Education, and is the venue in which the alleged tortuous conduct occurred and is within the jurisdiction of the United States District Court for the Southern District of West Virginia.

17. On April 18, 2013, and at the relevant times to this case, Defendant, Ernestine Sutherland, was acting as the Logan Middle School Principal under color of law – to wit, under the color of the statutes, ordinances, regulations, policies, customs,

patterns and usages of the Logan County Board of Education and the State of West Virginia.

18.   On April 18, 2013, and at the relevant times to this case, Defendant, David Burroway was acting as an agent, servant, and/or employee of the Logan County Board of Education within the scope of his employment as a Teacher at Logan Middle School.

19.   On April 18, 2013, and at the relevant times to this case, Defendant, Howard Rockhold, was acting as an agent, servant and/or employee of the Logan County Board of Education within the scope of his employment as a Teacher at Logan Middle School.

20.   On April 18, 2013, and at the relevant times to this case, Defendant, Anita Gore, was acting as an agent, servant and/or employee of the Logan County Board of Education within the scope of her  employment as a Secretary at Logan Middle School.

21.   On April 18, 2013, and at the relevant times to this case, Defendant, Christopher Marcus, was acting as an agent, servant, and/or employee of the Logan County Board of Education within the scope of his employment as a Teacher at Logan Middle School.

22.   On April 18, 2013, and at the relevant times to this case, Defendant, Wilma Zigmond, was acting as an agent, servant, and/or employee of Logan County Board of Education within the scope of her employment as the Superintendent of Logan County Schools.

23.  On April 18, 2013, and the relevant times to this case, Defendant, Phyllis Adkins, was serving in her official capacity as a member and President of the Logan County Board of Education.

24.  On April 18, 2013, and the relevant times to this case, Defendant, William Davis, was serving in his official capacity as a member and Vice President of the Logan County Board of Education.

25.  On April 18, 2013, and the relevant times to this case, Defendant, Mark McGrew, was serving in his official capacity as a member of the Logan County Board of Education.

26.  On April 18, 2013, and the relevant times to this case, Defendant, Dr. Pat J. White, was serving in his official capacity as a member of the Logan County Board of Education.

27.  On April 18, 2013, and the relevant times to this case, Defendant, James Frye, was serving in his official capacity as a member of the Logan County Board of Education.

28.  On April 18, 2013, and at the relevant times to this case, Phyllis Adkins was acting under color of law – to wit, under the color of the statutes, ordinances, regulations, policies, customs, patterns and usages of the Logan County Board of Education and the State of West Virginia.

29.  On April 18, 2013, and at the relevant times to this case, William Davis was acting under color of law – to wit, under the color of the statutes, ordinances, regulations, policies, customs, patterns and usages of the Logan County Board of Education and the State of West Virginia.

30. On April 18, 2013, and at the relevant times to this case, Mark McGrew was acting under color of law – to wit, under the color of the statutes, ordinances, regulations, policies, customs, patterns and usages of the Logan County Board of Education and the State of West Virginia.

31. On April 18, 2013, and at the relevant times to this case, Dr. Pat J. White was acting under color of law – to wit, under the color of the statutes, ordinances, regulations, policies, customs, patterns and usages of the Logan County Board of Education and the State of West Virginia.

32. On April 18, 2013, and at the relevant times to this case, James Frye was acting under color of law – to wit, under the color of the statutes, ordinances, regulations, policies, customs, patterns and usages of the Logan County Board of Education and the State of West Virginia.

**COUNT ONE**
**Violation of Plaintiff's Civil Rights**
**Pursuant to 42 UNITED STATES Code  §1983**
(FIRST AMENDMENT FREEDOM OF SPEECH, EXPRESSION & ASSOCIATION)

33. Plaintiff, JM, repeats, reiterates, and realleges as part of this cause of action each and every allegation contained in Paragraphs 1- 32 with the same force and effect as it fully set forth herein.

34. On or about April 18, 2013, JM wore an olive green, NRA Pro Second Amendment logo-ed t-shirt to the Logan Middle School, which is a public school located in Logan County, West Virginia in which he was enrolled as a student.

35.    JM had purchased the shirt at Cabela's Retail Store at 200 Cross Terrace Blvd., Charleston, West Virginia 25309.

36.    On or about April 18, 2013, JM was stopped in the cafeteria by Defendant, Anita Gore, who was acting under color of state law as the Secretary at Logan Middle School.

37.    Defendant Gore indicated that she felt the NRA Pro Second Amendment message and NRA logo on the Plaintiff's t-shirt was inappropriate and violated the Logan County Board of Education's dress code policy. She ordered him to disrobe and either change or turn the t-shirt inside out concealing the National Rifle Association logo.

38.    In her effort to censor the image and message on the NRA t-shirt, the Defendant, Anita Gore, summoned teacher, David Burroway, to address the situation and confront JM.

39.    The Defendant, David Burroway, ordered JM to partially disrobe and either change his shirt or turn the t-shirt inside out concealing the National Rifle Association logo.

40.    The Defendant, David Burroway, ordered JM to censor the image and message on the shirt or face suspension from school.

41.    Under threat of the penalty of school suspension, JM engaged in an obedient debate with Defendant, David Burroway, regarding the apparent violation of Plaintiff's First and Fourteenth Amendment rights and the violation of the Logan County Board of Education Dress Code.

42.     The 2012–2013 Student/Parent Handbook of school rules and procedures for the Logan Middle School set forth general expectations for student behavior and appearance.

43.     The 2012–2013 Student/Parent Handbook of school rules and procedures for the Logan Middle School, sets forth the following expectation for student appearance:

1.   Since there is a direct relationship between dress and behavior, it is believed that students and staff should dress appropriately for the school setting.  Appropriate, will be defined here as right and correct for the school setting and functions, conducive to learning, and shall not distract from or be disruptive to the learning process.

2.   Clothing and accessories that display profanity, violence, discriminatory messages or sexually suggestive phrases are not to be worn at school or school functions.  Clothing that displays advertisements for any alcohol, tobacco, or drug product is not to be worn at school or school functions.

44.     The Official Logan County Board of Education School Dress Code that was in effect on April 18, 2013, is as follows:

The Logan County Board of Education believes that its major concern is the safety and well-being of the students of Logan County, and to provide every child with an appropriate environment for a thorough and efficient education.

Therefore, the development of a policy on dress code is for the protection of the health and safety of the students and to remove any distractions or obstacles from the daily educational process.

Since there is a direct relationship between dress and behavior, it is believed that students and staff should dress appropriately for the school setting.  Appropriate, will be defined here as right and correct for the school setting and functions, conducive to learning, and shall not distract from or be disruptive to the learning process.

Logan County School students should always be neat and clean in their dress and appearance.  It is expected that each student will maintain a proper mode of dress, both during the school day and at all school activities.  If in the judgment of the administration, a student is dressed inappropriately, the student will be required to change clothes or cover up inappropriate clothing before returning to classes. Time out of class will be regarded as unexcused. Additional measures may be taken if deemed necessary by the administration.  The administration has the final authority on all matters relating to the dress code.

Dress Code:

    a.  Student dress and grooming should be in good taste and appropriate for the occasion.

    b.  Sunglasses are not to be worn in the classroom unless a medical permit is on file.

    c.  No hats or bandannas are to be worn in the building during the class day.  If students must wear a hat to school, the hat must

be placed in the locker and left there until the school day is over.  Vocational students may take their hat at the time of their departure.

d.   Appropriate clothing should be worn at all times.  The main torso of the body should not be visible.   Therefore, the wearing of mesh shirts would be inappropriate without an appropriate shirt under the mesh shirt.   The wearing of garments considered as tank tops or tops with spaghetti straps is inappropriate.

e.   Any article of clothing or accessories, such as jewelry with spikes, dog collars, wallet chains, chains worn as belts, that may cause injury to another student may not be worn at school or school functions.

f.   Clothing and accessories that display profanity, violence, discriminatory messages or sexually suggestive phrases are not to be worn at school or school functions.

g.   Clothing that displays advertisements for any alcohol, tobacco, or drug product is not to be worn at school or school functions.

h.   Waistband of shorts, slacks, skirts, and similar garments must be worn above the hips. If belts, suspenders, or straps are worn, they must be worn in place and fastened.

Undergarments shall not be visible. Any article of clothing that is excessively torn may not be worn.

i.   Shoes must be worn at all times. Shoes with laces should be laced and tied at all times.

j.   Business-style blazers, suit coats, and ties are permitted but outdoor jackets and coats are not to be worn or carried to class.

k.   The legs of trousers and pants shall be worn down at all times.

l.   Hem lengths on dresses, skirts, and shorts must be no higher than mid thigh.

m.   Students who attend R.R. Willis Career Center must observe all safety program dress code requirements.

45.   The censored NRA logo and image on JM's shirt did not relate to drugs.

46.   The censored NRA logo and image on JM's shirt did not relate to alcohol.

47.   The censored NRA logo and image on JM's shirt did not relate to tobacco.

48.   The censored NRA logo and image on JM's shirt did not relate to sex.

49.   The censored NRA logo and image on JM's shirt did not relate to profanity.

50.   The censored NRA logo and image on JM's shirt did not reflect adversely upon persons because of their race or ethnic group.

51.   The censored NRA logo and image on JM's shirt did not relate to derogatory statements.

52.   The censored NRA logo and image on JM's shirt did not relate to violence or the display of violence.

53.    The censored NRA logo and image on JM's shirt did not distract from the educational process of the school.

54.    The censored NRA logo and image on JM's shirt did not disrupt the educational process of the school.

55.    No substantial and material disruption of the class work arose at the middle school as a result of JM wearing the olive green, NRA logo-ed Pro Second Amendment t-shirt.

56.    No substantial and material interference with the rights of others arose at the middle school as a result of JM wearing the olive green, NRA logo-ed Pro Second Amendment shirt.

57.    JM has a federally protected right and privilege to be free from deprivation of his freedom of speech, expression and association under the First Amendment to the United States Constitution as incorporated and applicable to the state by the Fourteenth Amendment to the United States Constitution.

58.    The Defendants are aware or should be aware that despite pedagogical concerns, neither students nor teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.

59.    The Defendant, David Burroway, knew or should have known JM has a federally protected right and privilege to be free from deprivation of his freedom of speech, expression and association under the First Amendment to the United States Constitution, as incorporated and applicable to the state by the Fourteenth Amendment to the United States Constitution.

60.     On or about April 18, 2013, the Defendant, David Burroway, decided in an act of deliberate indifference to the rights of JM, when he ordered JM to partially disrobe, and either change or turn his NRA logo-ed shirt inside out, concealing and censoring the logo and image.

61.     As a direct and proximate cause of his actions, the Defendant, David Burroway, under color of law, deprived JM of certain civil rights secured under the First and Fourteenth Amendment of the United States Constitution, by wrongfully censoring JM's freedom of speech, expression and association.

62.     The Defendant, Anita Gore, knew or should have known JM has a federally protected right and privilege to be free from deprivation of his freedom of speech, expression and association under the First Amendment to the United States Constitution, as incorporated and applicable to the state by the Fourteenth Amendment to the United States Constitution.

63.     On or about April 18, 2013, the Defendant, Anita Gore, decided in an act of deliberate indifference to the rights of JM, when she ordered JM to partially disrobe, and either change or turn his NRA logo-ed shirt inside out, concealing and censoring the logo and image.

64.     As a direct and proximate cause of her actions, the Defendant, Anita Gore, under color of law, deprived JM of certain civil rights secured under the First and Fourteenth Amendment of the United States Constitution, by wrongfully censoring JM's freedom of speech, expression and association.

65.     As a direct and proximate cause of her actions, the Defendant, Anita Gore under color of law, deprived JM of certain civil rights secured under the First and

Fourteenth Amendment of the United States Constitution, by arbitrarily censoring JM's freedom of speech, expression and association.

66.     The Defendant, Anita Gore, knew or should have known JM has a federally protected right and privilege to be free from deprivation of his freedom of speech, expression and association under the First Amendment to the United States Constitution, as incorporated and applicable to the state by the Fourteenth Amendment to the United States Constitution.

67.     On or about April 18, 2013, the Defendant, Christopher Marcus, decided in an act of deliberate indifference to the rights of JM, when he ordered the Logan County Middle School student to delete the video of Defendants Gore and Burroway ordering JM to partially disrobe, and either change or turn his NRA logo-ed shirt inside out, concealing and censoring the logo and image.

68.     As a direct and proximate cause of his actions, the Defendant, Christopher Marcus, under color of law, deprived JM of certain civil rights secured under the First and Fourteenth Amendment of the United States Constitution, by wrongfully censoring video evidence of JM's deprivation of freedom of speech, expression and association.

69.     As a direct and proximate cause of his actions, the Defendant, Christopher Marcus under color of law, deprived JM of certain civil rights secured under the First and Fourteenth Amendment of the United States Constitution, by arbitrarily censoring, and causing the video evidence to be deleted from a student's cell phone of the deprivation of JM's freedom of speech, expression and association.

70.      As direct and proximate cause of her actions, the Defendant, Ernestine Sutherland, under color of law, deprived JM of certain civil rights secured under the First and Fourteenth Amendment of the United States Constitution, by willfully censoring JM's freedom of speech, expression and association.

71.      As a direct result of the Defendants, David Burroway, Anita Gore, Phyllis Adkins, William Davis, Mark McGrew, Pat Joe White, James Frye, Wilma Zigmond, Ernestine Sutherland, Howard Rockhold, Logan Middle School, and the Logan County Board of Education's violation of JM's civil rights, JM suffered damages including but not limited to, the chilling his First Amendment Rights, emotional damages, embarrassment, humiliation, stress and/or mental anguish and all other damages directly and or consequentially associated with the deprivation of one's civil rights.

72.      As a direct result of the Defendants, David Burroway, Anita Gore, Phyllis Adkins, William Davis, Mark McGrew, Pat Joe White, James Frye, Wilma Zigmond, Ernestine Sutherland, Howard Rockhold, Logan Middle School, and the Logan County Board of Education's actions, JM suffered damages, including attorney's fees and costs associated with vindicating his civil rights.

**COUNT TWO**
**Violation of Plaintiff's Civil Rights**
**Pursuant to 42 United States Code §1983**
(DUE PROCESS)

73.      Plaintiff, JM repeats, reiterates, and realleges as part of this cause of action each and every allegation contained in Paragraphs 1- 72 with the same force and effect as if fully set forth herein.

74.     According to the Logan County Board of Education policy, the Defendant, Ernestine Sutherland, had the responsibility for insuring that all students, staff members, and parents are provided the opportunity to become familiar with student conduct policies and regulations.

75.     Fundamental due process requires school disciplinary rules must be sufficiently explicit to inform those who are subject to them what conduct on their part will render them liable to their penalties and not so vague that men of common intelligence must necessarily guess at their meaning and differ as to their applications.

76.     Fundamental due process and ordinary notions of fair play further require that the school give adequate notice of the school disciplinary rules so as to allow a student and his parent to govern his or her conduct and or action in a fashion that would comport with the school restrictions.

77.     Prior to the events of April 18, 2013, the Defendants did not give proper and adequate notice that School Rules prohibit students from wearing clothing that depicts NRA Logos, Firearms, or Pro Second Amendment messages to JM or his parents.

78.     Prior to the events of April 18, 2013, the Defendants did not publish in the Logan County Board of Education Dress Code and/or Rules the rule or belief that Defendants, David Burroway, Harold Rockhold and Anita Gore relied on in censoring JM's t-shirt which allegedly prohibits students from wearing clothing that depicts NRA Logos, firearms or Pro Second Amendment statements.

79.     Prior to the events of April 18, 2013, the Defendants did not publish in the Logan Middle School Student/Parent Handbook of school rules, procedures and policies for the year 2012-2013 notice of the School Rule which allegedly prohibits NRA Logos, firearms or Pro Second Amendment statements similar to those on JM's t-shirt.

80.     JM is entitled to due process notice of school policies, rules and/or procedures which could subject him to disciplinary action, so as to enable him to adequately govern his conduct accordingly.

81.     Like all citizens, the Defendants are deemed to know the applicable law governing their behavior, authority, duties and procedures.

82.     JM has a federally protected right and privilege to be free from deprivation of life, liberty, or property without due process of the law under the Fourteenth Amendment to the United States Constitution.

83.     The Defendants knew or should have known JM has a federally protected right and privilege to be free from deprivation of life, liberty, or property without due process of the law, under the Fourteenth Amendment to the United States Constitution.

84.     The Defendants knew or should have known that they could not craft, adopt, pass, ratify and/ or enforce a "secret" and/or unwritten, dress code policy to which JM was not provided due process notice.

85.     On or about April 18, 2013, the Defendants decided in an act of deliberate indifference to the rights of JM to knowingly take action to circumvent the written policies of the school and Logan County Board of Education.

86.     On or about April 18, 2013, the Defendants decided in an act of deliberate indifference to the rights of JM to arbitrarily and capriciously take action to circumvent the written disciplinary policies, rules, and procedures of the school and Logan County Board of Education.

87.     Specifically, Defendants intentionally ignored the rules, policies and written procedures regarding dress and appearance and disciplinary action.

88.     Specifically, Defendants willfully ignored the rules, policies and written procedures regarding dress and appearance and disciplinary action.

89.     Specifically, Defendant, David Burroway, arbitrarily ignored the rules, policies and written procedures regarding dress and appearance and disciplinary action.

90.     Specifically, Defendant, Anita Gore, capriciously ignored the rules, policies and written procedures regarding dress and appearance and disciplinary action.

91.     Specifically, Defendant, Howard Rockhold, capriciously ignored the rules, policies and written procedures regarding dress and appearance and disciplinary action.

92.     Specifically, Defendant, Christopher Marcus, capriciously ordered and caused to be deleted a student's cell phone video of Defendants and fellow employees actions toward JM.

93.     As a direct and proximate result of their actions, the Defendants, under color of law, deprived JM of certain civil rights secured under the 5th and 14th Amendments of the United States Constitution, by wrongfully censoring his

United States Constitutional freedom of speech, expression and association on April 18, 2013, without due process of law.

94.　　As a direct and proximate result of their actions, the Defendants, under color of law, deprived JM of certain civil rights secured under the 5th and 14th Amendments of the United States Constitution, by arbitrarily censoring his United States Constitutional freedom of speech, expression and association on April 18, 2013 without due process of law.

95.　　As a direct and proximate result of the Defendants actions, JM was deprived of a liberty interest and suffered damages, as a result of the violation of his Civil Rights, including but not limited to the chilling of his constitutional rights, emotional damages, embarrassment, stress and/or mental anguish and all other damages directly and or consequentially associated with the deprivation of one's civil rights.

96.　　JM had no adequate and/or available post deprivation remedy.

## COUNT THREE
## Violation of Plaintiff's Civil Rights
## Pursuant to 42 United States Code §1983
(EQUAL PROTECTION)

97.　　Plaintiff, JM repeats, reiterates, and realleges as part of this cause of action each and every allegation contained in Paragraphs 1- 96 with the same force and effect as if fully set forth herein.

98.　　The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution mandates that government shall not "deny to any person within its jurisdiction the equal protection of the laws."

99.     The Defendants knew or should have known that the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution mandates that government shall not "deny to any person within its jurisdiction the equal protection of the laws."

100.    The Defendants actions in failing to adhere to their own procedural and/or substantive rules, procedures and policies was arbitrary and capricious.

101.    The Defendants actions on April 18, 2013, constitutes the Defendants inconsistent application of procedures to its students.

102.    The Defendants actions in failing to adhere to their own procedural and/or substantive rules, procedures and policies arbitrarily singled JM out for disparate treatment.

103.    The Defendants actions in failing to adhere to their own procedural and/or substantive rules, procedures and policies placed JM in a special class, to which he is treated differently than other similarly situated individuals or groups.

104.    The Defendants actions in failing to adhere to their own procedural and/or substantive rules, procedures and policies constitutes a gross abuse of governmental power.

105.    The Defendants actions in failing to adhere to their own procedural and/or substantive rules, procedures and policies constitutes a personal and knowing disregard and/or deliberate indifference for JM's legal rights.

106.    As a direct and proximate result of their actions, the Defendants, under the color of law, deprived the Plaintiff of equal protection rights secured under the

14th Amendment of the United States Constitution, by their utter disregard for the equal application of law and procedure and written school policies to JM.

107.     As a direct and proximate result of their actions, the Defendants, under color of law, deprived JM of certain civil rights secured under the 14th Amendment of the United States Constitution, by arbitrarily taking action in contradiction of written school policies in violation of JM's right to equal protection under the law.

108.     As a direct and proximate result of the Defendants actions in violating the civil rights of JM, JM suffered damages, including but not limited to the chilling of his constitutional rights, emotional damages, embarrassment, stress and/or mental anguish and all other damages directly and or consequentially associated with the deprivation of one's civil rights.

**COUNT FOUR**
**Violation of Civil Rights to Freedom of Speech, Expression and Association**
**Under the West Virginia Constitution Article 3, Section 7**

109.     Plaintiff, JM, repeats, reiterates, and realleges as part of this cause of action each and every allegation contained in Paragraphs 1-108 with the same force and effect as if fully set forth herein.

110.     The Defendants knew or should have known JM has certain civil rights, including the freedom of speech, expression and association secured under Article 3, Section 7 of the West Virginia Constitution.

111.     On or about April 18, 2013, the Defendant, Anita Gore, decided in an act of deliberate indifference to the rights of JM, when she would not allow JM to proceed through the lunch line, stating that his NRA logo-ed t-shirt violated the

school's dress policy and ordered JM to partially disrobe, and either change or turn his NRA logo-ed t-shirt inside out, concealing and censoring the logo and image.

112.    On or about April 18, 2013, the Defendant, David Burroway, decided in an act of deliberate indifference to the rights of JM, when he ordered JM to partially disrobe, and either change or turn his NRA logo-ed t-shirt inside out, concealing and censoring the logo and image.

113.    On or about April 18, 2013, the Defendant, Christopher Marcus, decided in an act of deliberate indifference to the rights of JM, when he ordered and caused to be deleted a student's cell phone video documenting Defendant Gore and Burroway, under threat of suspension, of not allowing JM to proceed through the lunch line, stating that his NRA logo-ed t-shirt violated the school's dress policy and ordered JM to partially disrobe, and either change or turn his NRA logo-ed t-shirt inside out, concealing and censoring the logo and image.

114.    As a direct and proximate result of their actions, the Defendants, while acting under color of law, deprived JM of certain civil rights secured under Article 3, Section 7 of the West Virginia Constitution, by wrongfully chilling and infringing upon JM's freedom of speech, expression and association without due process of law.

115.    As a direct and proximate result of her actions, the Defendant, Ernestine Sutherland, Principal of Logan Middle School, under color of law, deprived JM of certain civil rights secured under the Article 3, Section 7 of the West Virginia

Constitution, by wrongfully chilling and/or violating JM's freedom of speech, expression and association without due process of law.

116.    As a direct and proximate result of her actions, the Defendant, Anita Gore, under color of law, deprived JM of certain civil rights secured under Article 3, Section 7 of the West Virginia Constitution, by arbitrarily censoring his speech, expression and association rights.

117.    As a direct and proximate result of the Defendants actions, JM suffered damages, a result of the violation of his Civil Rights, including but not limited to the chilling of his constitutional rights, emotional damages, embarrassment, stress and/or mental anguish and all other damages directly and or consequentially associated with the deprivation of one's civil rights.

**COUNT FIVE**
**Violation of Civil Rights to Due Process**
**Under the West Virginia Constitution Article 1, Section 11**

118.    Plaintiff, JM, repeats, reiterates, and realleges as part of this cause of action each and every allegation contained in Paragraphs 1-117 with the same force and effect as if fully set forth herein.

119.    According to Logan County Board of Education policy, the Defendants, Ernestine Sutherland and/or Wilma Zigmond had the responsibility for insuring that all students, staff members, and parents are provided the opportunity to become familiar with student conduct policies and regulations.

120.    Fundamental due process requires that school disciplinary rules must be sufficiently explicit to inform those who are subject to them what conduct on their part will render them liable to their penalties and not so vague that men of

common intelligence must not necessarily guess at their meaning and differ as to their application.

121.     Fundamental due process and ordinary notions of fair play further require that the school give adequate notice of the school disciplinary rules so as to allow a student and his parents to govern his/or her conduct and or action in a fashion that would comport with the school restrictions.

122.     Prior to the events of April 18, 2013, the Defendants did not give proper and adequate notice that Defendants Gore and Burroway's belief that School Rules prohibit students from wearing clothing that depicts firearms to JM or his parents.

123.     Prior to the events of April 18, 2013, the Defendants did not publish in the Logan County Board of Education Rules the rule which allegedly "prohibits students from wearing clothing that depicts firearms."

124.     Prior to the events of  April 18, 2013, the Defendants did not publish in the Logan Middle School Student/Parent Handbook of rules, procedures and policies for the year 2012-2013 notice of the School Rule which allegedly prohibits students from wearing clothing that depicts firearms.

125.     JM is entitled to due process notice of school policies, rules and/or procedures which could subject him to disciplinary action, so as to enable him to adequately govern his conduct accordingly.

126.     Like all citizens, the Defendants are deemed to know the applicable state law governing their behavior, authority, duties and procedures.

127.    JM has a State right and privilege to be free from deprivation of life, liberty, or property without due process of the law, under Article 3, Section 7 of the West Virginia Constitution.

128.    The Defendants knew or should have known JM has a State right and privilege to be free from deprivation of life, liberty, or property without due process of the law, under Article 3, Section 7 of the West Virginia State Constitution.

129.    The Defendants knew or should have known that they could not craft, adopt, pass, ratify and/or enforce a "secret" and/or unwritten, dress code policy which could result in the imposition of disciplinary action to which JM was not provided due process notice.

130.    On or about April 18, 2013, the Defendants decided in an act of deliberate indifference to the rights of JM to knowingly take action to circumvent the written policies of the school and School Board.

131.    On or about April 18, 2013, the Defendant, Christopher Marcus, decided in an act of deliberate indifference to the rights of JM to knowingly cause to be deleted a student's cell phone video of Defendants Gore and Burroway taking action to circumvent the written policies of the school and School Board.

132.    On or about April 18, 2013, the Defendants decided in an act of deliberate indifference to the rights of JM to arbitrarily and capriciously take action to circumvent the written disciplinary policies, rules, and procedures of the school and School Board.

133.    On or about April 18, 2013, the Defendant, Christopher Marcus, decided in an act of deliberate indifference to the rights of JM to arbitrarily and capriciously take action to circumvent the written disciplinary policies, rules, and procedures of the school and School Board by causing to be deleted a student's cell phone video demonstrating the Defendants Gore and Burroway's actions.

134.    Specifically, Defendants intentionally ignored the rules, policies and written procedures regarding dress and appearance and disciplinary action.

135.    Specifically, Defendants willfully ignored the rules, policies and written procedures regarding dress and appearance and disciplinary action.

136.    Specifically, Defendant Gore arbitrarily ignored the rules, policies and written procedures regarding dress and appearance and disciplinary action.

137.    Specifically, Defendant Burroway capriciously ignored the rules, policies and written procedures regarding dress and appearance and disciplinary action.

138.    Specifically, Defendant Sutherland capriciously ignored the rules, policies and written procedures regarding dress and appearance and disciplinary action.

139.    Specifically, Defendant Zigmond capriciously ignored the rules, policies and written procedures regarding dress and appearance and disciplinary action.

140.    As a direct and proximate result of their actions, the Defendants, under color of law, deprived JM of certain civil rights secured under Article 3, Section 7 of the West Virginia Constitution, by wrongfully censoring his State Constitutional freedom of speech, expression and association on April 18, 2013 without due process of law.

141.     As a direct and proximate result of their actions, the Defendants, under color of law, deprived JM of certain civil rights secured under Article 31, Section 7 of the West Virginia Constitution, by arbitrarily censoring his State Constitutional freedom of speech, expression and association on April 18, 2013, without due process of law.

142.     As a direct and proximate result of the Defendants actions, JM was deprived of a liberty interest and suffered damages, as a result of the violation of his Civil Rights, including but not limited to the chilling of his constitutional rights, emotional damages, embarrassment, stress and/or mental anguish and all other damages directly and or consequentially associated with the deprivation of one's civil rights.

143.     JM had no adequate and/or available post deprivation remedy.

### COUNT SIX
### Violation of Plaintiff's Civil Rights by
### School Board Members, School Superintendent and School Principal
### (42 UNITED STATES Code  §1983, DUE PROCESS VIOLATION)
2012-2013 Policy

144.     Plaintiff, JM, repeats, reiterates, and realleges as part of this cause of action each and every allegation contained in Paragraphs 1- 143 with the same force and effect as if fully set forth herein.

145.     The School Board Members/Defendants in their official capacity had the responsibility for policy making and were involved in the procedures for developing, adopting, authorizing, and or ratifying policies that spell out how the school board will operate, including the creation, adoption, crafting, drafting

an/or codifying of rules, procedures, policies and/or customs that govern student behavior, including but not limited to dress code guidelines.

146.     The Defendant, Wilma Zigmond, in her official capacity as the Superintendent of the Logan County Board of Education, had the responsibility for policy making and was involved in the procedures for developing, adopting, authorizing, and or ratifying policies that spell out how the school district will operate, including the creation, adoption, crafting, drafting an/or codifying of rules, procedures, policies and/or customs that govern student behavior, including but not limited to dress code guidelines.

147.     The School Board Members/Defendants in their official capacity, had the responsibility and direct authority to accept, reject, or modify recommendations of the Superintendent regarding policy making and procedures for developing, adopting, authorizing, and or ratifying policies that spell out how the school board will operate, including the creation, adoption, crafting, drafting an/or codifying of rules, procedures, policies and/or customs that govern student behavior, including but not limited to dress code guidelines.

148.     Due Process clauses of the 5th and 14th Amendment to the United States Constitution dictate that an individual student and/or his or her parents be duly advised in sufficient time so they can adequately govern their behavior appropriately, prior to any threat of action or actual disciplinary action being taken against the student for breach of said policy.

149.     Due Process clauses of the 5th and 14th Amendment to the United States Constitution dictate that rules and procedures governing student behavior be

worded in a clear and concise manner and terms so that persons of common intelligence should not have to guess at their meaning and differ as to their application.

150.     To the extent this no firearm displayed on student clothing policy actually existed, as represented by Defendants Gore and Burroway, employees of the Logan County Board of Education, no such written notice of an alleged violation was given to JM or his parents prior to Defendants, Gore, Burroway, Rockhold and Sutherland taking action to compel JM to censor his NRA logo-ed shirt by partial disrobing and turning the shirt inside out.

151.     To the extent that Defendants Gore and Burroway's representation is correct and it was the established school policy, rule, custom, usage, practice, and/or procedure for Logan County Board of Education in the 2012- 2013 school year to prohibit students from wearing clothing that depicts firearms then upon information and belief, it was adopted, allowed to be adopted, authorized, and/or ratified by the Members of the Logan County Board of Education in their official capacity, the School Board Superintendent, in her official capacity while acting under color of law – to wit, under the color of the statutes, ordinances, regulations, policies, customs, patterns and usages of Logan County Board of Education and the State of West Virginia and/or Defendant Sutherland, in her official capacity as the Principal of Logan Middle School, while acting under color of law – to wit, under the color of the statutes, ordinances, regulations, policies, customs, patterns and usages of Logan County Board of Education and the State of West Virginia.

152.   To the extent the Defendants Gore and Burroway representation is correct and it was the established school policy, rule, custom, usage, practice, and/or procedure for the Logan County Board of Education in the 2012-2013 school year to prohibit students from wearing clothing that depicts firearms, then the Defendants had actual and/or constructive notice of the policy.

153.   As a direct and proximate result of Defendants, in not providing adequate due process notice of the existence of said school policy, JM suffered a deprivation of his constitutional due process rights and a deprivation and chilling of his First Amendment Freedoms of speech, express and association.

154.   As a direct and proximate result of Defendants crafting, drafting, adopting, allowing to be adopted, authorizing, and/or ratifying a school policy which was over broad, JM suffered a deprivation of his constitutional due process rights under the 5th and 14th Amendments to the United States Constitution.

155.   As a direct and proximate result of Defendants crafting, drafting, adopting, allowing to be adopted, authorizing, and/or ratifying a school policy which was void for vagueness, JM suffered a deprivation of his constitutional due process rights under the 5th and 14th Amendments to the United States Constitution.

156.   As a direct and proximate result of the Defendants actions, JM suffered damages, a result of the violation of his Civil Rights, including, but not limited to, the deprivation and chilling of constitutional rights, emotional damages, embarrassment, stress and/or mental anguish and all other damages directly and/ or consequentially associated with the deprivation and chilling of one's civil rights.

**COUNT SEVEN**
**Violation of Plaintiff's Civil Rights by**
**School Board Members, School Superintendent and School Principal**
**(42 UNITED STATES Code §1983, FIRST AMENDMENT FREEDOM**
**OF SPEECH, EXPRESSION & ASSOCIATION)**
2012-2013 Policy

157.     Plaintiff, JM, repeats, reiterates, and realleges as part of this cause of action each and every allegation contained in Paragraphs 1-156 with the same force and effect as if fully set forth herein.

158.     The School Board Member/Defendants in their official capacity had the responsibility for policy making and were involved in the procedures for developing, adopting, authorizing, and or ratifying policies that spell out how the school district will operate, including the creation, adoption, crafting, drafting an/or codifying of rules, procedures, policies and/or customs that govern student behavior, including but not limited to dress code guidelines.

159.     The Defendant, Wilma Zigmond, in her official capacity as the Superintendent of Logan County Board of Education, had the responsibility for policy making and was involved in the procedures for developing, adopting, authorizing, and or ratifying policies that spell out how the school district will operate, including the creation, adoption, crafting, drafting and/or codifying of rules, procedures, policies and/or customs that govern student behavior, including but not limited to dress code guidelines.

160.     The Logan County Board of Education Members/Defendants in their official capacities had the responsibility and direct authority to accept, reject, or modify recommendations of the Superintendent regarding policy making and

procedures for developing, adopting, authorizing, and or ratifying policies that spell out how the school district will operate, including the creation, adoption, crafting, drafting an/or codifying of rules, procedures, policies and/or customs that govern student behavior, including but not limited to dress code guidelines.

161.     The Defendants, Gore and Burroway, took the action to censor JM's NRA Logo-ed shirt by not allowing him to continue through the lunch line, based upon an alleged School policy that allegedly prohibits students from wearing clothing that depicts firearms.

162.     To the extent this policy actually existed in 2012-2013 school year, it was void for vagueness, unconstitutionally over broad and ambiguous and sought to arbitrarily and unnecessarily curtail  and/or to sweep into its coverage speech, images and/or messages which are protected types of speech, expression, and association, without being narrowly tailored to serve a significant government interest.

163.     To the extent this policy actually existed, as represented by Defendants Gore and Burroway, who were employees of the Logan County Board of Education, no such written notice was given to JM or his parents prior to Defendants, Gore, Burroway,  Rockhold, and Sutherland taking action to compel the Plaintiff to censor his NRA Logo-ed shirt by partially disrobing, changing or turning the t-shirt inside out.

164.     To the extent the Defendants Gore and Burroway, employees of the Logan County Board of Education, representation is correct and it was the established school policy, rule, custom, usage, practice, and/or procedure for Logan County

Board of Education in the 2012-2013 school year to prohibit students from wearing clothing that depicts firearms, then upon information and belief, it was drafted, adopted, allowed to be adopted, authorized, and/or ratified by the Members of the Logan County Board of Education in their official capacity, the School Superintendent and/or Defendant Ernestine Sutherland, in her official capacity as the Principal of Logan Middle School, while acting under the color of law – to wit, under the color of statutes, ordinances, regulations, policies, customs, patterns and usages of The Logan County Board of Education and the State of West Virginia.

165. To the extent the Defendants Gore and Burroway's representation is correct and it was the established school policy, rule, custom, usage, practice, and/or procedure for Logan County Board of Education in the 2012-2013 school year to prohibit students from wearing clothing that depicts firearms, then the Defendants had actual and/or constructive notice of the policy.

166. As a direct and proximate result of Defendants crafting, drafting, adopting, allowing to be adopted, authorizing, and/or ratifying a school policy which was over broad, JM suffered a deprivation and chilling of his First Amendment Freedoms of speech, expression and association.

167. As a direct and proximate result of Defendants crafting, drafting, adopting, allowing to be adopted, authorizing, and/or ratifying a school policy which was void for vagueness, JM suffered a deprivation and chilling of his First Amendment Freedoms of speech, expression, and association.

168.     As a direct and proximate result of the Defendants actions, JM suffered

damages, a result of the violation of his Civil Rights, including but not limited to

the chilling of his constitutional rights, emotional damages, embarrassment,

stress, and/or mental anguish and all other damages directly and or

consequentially associated with the deprivation of one's civil rights.

**COUNT EIGHT**
**Violation of Plaintiff's Civil Rights by**
**School Board Members, School Superintendent and School Principal**
**(Under West Virginia Const.  Article 3, Section 7)**
2012-2013 Policy

169.    Plaintiff, JM, repeats, reiterates, and realleges as part of this cause of action each and every allegation contained in Paragraphs 1 – 168 with the same force and effect as if fully set forth herein.

170.    Over ninety days elapsed with no response to the request for results of the investigation of the matter cited by the School Board's Attorney, Leslie Tyree.

171.    On or about April 29, 2013, a Freedom of Information Request was filed with the Logan County Board of Education formally seeking a copy of all school and county disciplinary rules and procedures governing dress, including, but not limited to, a copy of the alleged rule cited by Defendants Gore and Burroway which allegedly prohibited students from wearing clothing that depicts firearms. To date no response has been received to either request.

172.    The Defendants, while acting under authority of State Law - to wit, under the color of the statutes, ordinances, regulations, policies, customs, patterns and usages of the Logan County Board of Education and the State of West Virginia, created, adopted and/or ratified an unconstitutional policy which is void for vagueness and over broad, and which sweeps within its purview clearly constitutionally-protected speech, expression and indicia of association, with deliberate indifference to the constitutional deprivation it would create.

173.    The Defendants, while acting under authority of State Law - to wit, under the color of the statutes, ordinances, regulations, policies, customs, patterns and

usages of the Logan County Board of Education and the State of West Virginia, created, adopted and/or ratified an unconstitutional policy which is over broad, and vague and which sweeps within its purview clearly constitutionally protected speech, expression and indicia of association with a reckless disregard to the constitutional deprivation claims of JM.

174.    The Defendants, while acting under authority of State Law - to wit, under the color of the statutes, ordinances, regulations, policies, customs, patterns and usages of Logan County Board of Education and the State of West Virginia, created, adopted and/or ratified an unconstitutional policy which is over broad, and vague and which sweeps within its purview clearly constitutionally protected speech, expression and indicia of association in a callous indifference to the constitutional deprivation claims of JM.

175.    The Defendants, while acting under authority of State Law - to wit, under the color of the statutes, ordinances, regulations, policies, customs, patterns and usages of Logan County Board of Education and the State of West Virginia, created, adopted and/or ratified an unconstitutional policy dealing with student dress code for the 2012-2013 school year which is over broad, and vague and which sweeps within its purview clearly constitutionally protected speech, expression and indicia of association, and in doing so, they failed to correct and/or remedy the constitutional deficiencies of which they were on actual or constructive notice.

176.    As a direct and proximate result of the Defendants action in creating, adopting and/or ratifying an unconstitutional policy dealing with student dress

code for the 2012-2013 school year which is over broad, and vague and which sweeps within its purview clearly constitutionally protected speech, expression and indicia of association, the Defendants created a constitutional deprivation by actually depriving and or chilling JM's constitutional rights under Article 3, Section 7 of the West Virginia Constitution dealing with freedom of speech, expression and association.

177.    As a direct and proximate result of the Defendants actions, JM suffered damages, a result of the violation of his Civil Rights, including but not limited to the chilling of his constitutional rights, emotional damages, embarrassment, stress and/or mental anguish and all other damages directly and or consequentially associated with the deprivation of one's civil rights.

## COUNT NINE
## Punitive Damages

178.    Plaintiff, JM, repeats, reiterates, and realleges as part of this cause of action each and every allegation contained in Paragraphs 1 – 177 with the same force and effect as if fully set forth herein.

179.    On or about April 18, 2013, while acting under color of law, Defendants named in this complaint and employed at Logan Middle School knowingly and intentionally took action to violate and/or chill the First Amendment United States Constitutional Right to freedom of speech, expression and association of the Plaintiff and the West Virginia State Constitution Right to freedom of speech, expression and association of JM.

180.    On or about April 18, 2013, Defendant, Anita Gore, under her threat of suspension, physically stopped JM by placing her hand on JM's chest, stopping him from proceeding further, while advising JM that his NRA logo-ed t-shirt violated the school dress code and instructed JM to partially disrobe and to either change or turn the NRA Pro Second Amendment shirt inside out concealing the NRA logo or face suspension from school.    Then, Ms. Gore summoned Mr. David Burroway to view JM's NRA Pro Second Amendment shirt, stating to Mr. Burroway that the shirt was in violation of the Logan County Board of Education's Dress Code. and either change or turn his t-shirt inside out concealing the shirts NRA logo and message or face suspension from school, she did so with a reckless, malicious, deliberate, willful, and intentional disregard for JM's Due Process rights both under the West Virginia Constitution and under the United States Constitution.

181.    On or about April 18, 2013, when David Burroway ordered JM under the threat of suspension to partially disrobe and either change or turn his t-shirt inside out concealing the shirts NRA logo and message or face suspension from school, he did so with a reckless, malicious, deliberate, willful, and intentional disregard for JM's Due Process rights both under the West Virginia Constitution and under the United States Constitution.

182.    On or about April 18, 2013, when Howard Rockhold ordered JM under threat of suspension to partially disrobe and either change or turn the shirt inside out concealing the shirts NRA logo and message or face suspension from school, he did so with a reckless, malicious, deliberate, willful and intentional disregard

for JM's Due Process rights both under the West Virginia Constitution and under the United States Constitution.

183.    On or about April 18, 2013, when Defendant Anita Gore ordered JM under threat of suspension to partially disrobe and either change or turn the shirt inside out concealing the shirts' NRA logo and message or face suspension from school, she did so with a reckless, malicious, deliberate, willful and intentional disregard for JM's Due Process rights both under the West Virginia Constitution and under the United States Constitution.

184.    On or about April 18, 2013, when Defendant Christopher Marcus ordered and caused to be deleted a student's cell phone video evidence of Defendants Gore and Burroway's interactions with JM under threat of suspension to partially disrobe and either change or turn the shirt inside out concealing the shirts' NRA logo and message or face suspension from school, he did so with a reckless, malicious, deliberate, willful and intentional disregard for JM's Due Process rights both under the West Virginia Constitution and under the United States Constitution.

185.    On or about April 18, 2013, when Defendant, Ernestine Sutherland ratified the directives given by Defendants Gore, Burroway and Rockhold under threat of suspension to partially disrobe and either change or turn his t-shirt inside out concealing the shirts' NRA logo and message or face suspension from school, she did so with a reckless, malicious, deliberate, willful, and intentional disregard for JM's Due Process rights both under the West Virginia Constitution and under the United States Constitution.

186.    On or about April 18, 2013, while acting under color of law, Defendants named in this complaint who served on the Logan County Board of Education or were employed by the Logan County Board of Education knowingly and intentionally supported, condoned and ratified the action by those defendants employed at Logan County Middle School to violate and/or chill the First Amendment United States Constitutional Right to freedom of speech, expression and association of the Plaintiff and the West Virginia Constitution Right to freedom of speech, expression and association of JM.

187.    When the Defendant Logan County Board of Education Members, and Superintendent of the Logan County Board of Education and Logan Middle School Principal, crafted, drafted, adopted, allowed to be adopted, authorized, and/or ratified a school policy for 2012-2013 which prohibited students from wearing clothing that depicts firearms, they did so with a knowing and intentional, reckless and/or callous and/or deliberate and/or willful and/or malicious disregard for the civil rights of JM and others.

188.    When the Defendant Logan County Board of Education Members, and Superintendent of the Logan County Board of Education and Logan Middle School Principal, crafted, drafted, adopted, allowed to be adopted, authorized, and/or ratified a school policy for 2012-2013 Student/Parent Handbook of school rules and procedures for the Logan Middle School to set forth the following expectation for student appearance:

   a. Since there is a direct relationship between dress and behavior, it is believed that students and staff should dress appropriately for the school

setting.  Appropriate will be defined here as right and correct for the school setting and functions, conducive to learning, and shall not distract from or be disruptive to the learning process.

b.  Clothing and accessories that display profanity, violence, discriminatory messages or sexually suggestive phrases are not to be worn at school or school functions.  Clothing that displays advertisements for any alcohol, tobacco, or drug product is not to be worn at school or school functions.

they did so with a knowing and intentional, reckless and/or callous and/or deliberate and/or willful and/or malicious disregard for the civil rights of JM and others.

189.    As a direct and proximate result of the Defendants knowing and intentional, reckless and/or callous and/or deliberate and/or willful and/or malicious disregard for the civil rights of JM, JM suffered direct, indirect, consequential and all other applicable damages.

190.    To deter others from acting in a knowing and intentional, reckless and/or callous and/or deliberate and/or willful and/or malicious disregard for the civil rights of JM and/or others, punitive damages are appropriate in this matter.

## COUNT TEN
## Costs and Attorney fees Under 42 United States Code §1988

191.    Plaintiff, JM, repeats, reiterates, and realleges as part of this cause of action each and every allegation contained in Paragraphs 1-190 with the same force and effect as if fully set forth herein.

192.    JM has brought a claim for relief in the form of proceedings to enforce the provisions of 42 U.S.C. §1983.

193.    Pursuant to 42 U.S.C. §1988 (b), this Court has the discretion to allow the prevailing plaintiff, JM, reasonable attorney fees as part of the costs of this litigation.

194.    Pursuant to 42 U.S.C. §1988 (c), this Court has the discretion to allow the prevailing Plaintiff reasonable expert fees as part of the costs of this litigation.

195.    As a direct and proximate result of the Defendants illegal, oppressive and unconstitutional acts, omissions and conduct, JM has been compelled to institute litigation to vindicate his civil rights.

196.    As a direct and proximate result of the Defendants illegal, oppressive and unconstitutional acts, omissions and conduct, JM has been compelled to employ counsel and/or experts to prosecute these proceedings, resulting in his incurring costs, reasonable attorney fees and/or expert fees for their services.

## COUNT ELEVEN
### Injunctive Relief

197.     Plaintiff, JM, repeats, reiterates, and realleges as part of this cause of action each and every allegation contained in Paragraphs 1 – 196 with the same force and effect as if fully set forth herein.

198.     The continued enforcement or threatened enforcement of the overly broad, arbitrary, capricious, and un-necessary restriction on JM's right to wear NRA logo-ed clothing, as alleged in the 2012-2013 school year chills JM's First Amendment Constitutional Right to speech, expression and association, and if not enjoined will continue to cause irreparable loss and damages to JM, with no adequate remedy at law.

**WHEREFORE**, JM requests that this Court grant the following relief as to each and every separate count set forth above:

a.     Award actual compensatory damages, consequential damages and special damages including but not limited to: compensation for embarrassment and humiliation, mental distress, and for damages related to the indignities visited upon him by the violation of his State and Federal Civil Rights, against each of the Defendants, individually and in their official capacity, jointly and severally, in the amount of $200,000.00 (Two-Hundred-Thousand Dollars) or such other amount deemed appropriate to adequately compensate JM for his damages.

b. Award punitive damages against the Defendants, jointly and severally, in the amount of $250,000.00 (Two-Hundred-Fifty-Thousand Dollars) or such other amount deemed appropriate to vindicate the public interest in deterring the abuse of authority and in deterring intentional, willful and callous disregard for the civil rights of citizens.

c. Award fees and costs of this action including attorneys and expert fees, and litigation expenses, incurred in vindicating JM's Civil Rights pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. §1988.

d. Award interest on the claims from the date of filing until Judgment, and then from Judgment until satisfied in full.

e. JM demands that the Defendants and their agents, contractors, employees, servants and all others acting at their direction be forever permanently enjoined and restrained from enforcing the alleged school rule which prohibits the right to wear clothing or personal belongings bearing NRA Logos and/or non-threatening images of firearms.

f. Based on the actual case and controversy set forth above, JM seeks the Court to enter a Declaratory Judgment declaring the school policy as contained in the 2012-2013 Student/Parent Handbook of school rules and procedures for the Logan Middle School, as to expectations for student appearance

dealing with unacceptable dress for students be declared unconstitutional as it provides unnecessary and improper restraints on the State and Federal Constitutional Right to wear messages on clothing, jewelry, and personal belongings that relate to lawful, non-violent, non-threatening images of firearms.

g. Award such other and further relief as this Court may deem appropriate.

I hereby certify that the aforementioned pleading is true and accurate to the best of my information and belief.

J_____ Plaintiff

Tanya Lardieri, Parent and
Next Friend

Dated: March 10, 2015

Respectfully Submitted,

By Counsel

**JURY DEMAND**

Pursuant to **FRCP 38**, the Plaintiff hereby **demands a trial by Jury**.

By Counsel

Benjamin F. White, Esq. WVSB (10062)
Benjamin F. White, Attorney at Law
338 Main Street
Chapmanville, WV 25508
Telephone: 304.855.2369
Facsimile: 304.855.2370