IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON, WEST VIRGINIA

JM a minor
by and through TANYA LARDIERI
his Parent and Next Friend

       Plaintiff,

v.                                  CIVIL ACTION NO.: 2:15-cv-04822

LOGAN COUNTY BOARD OF EDUCATION,
 et al,

       Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

      **COME NOW** the Defendants, Logan County Board of Education, Logan Middle School, Phyllis Adkins, William Davis, Mark McGrew, Dr. Pat White, and James Frye each in their official capacities, Wilma Zigmond, Ernestine Sutherland, David Burroway, Howard Rockhold, Anita Gore, and Christopher Marcus each in their individual and official capacities,  by counsel Duane J. Ruggier II, Jacob D. Layne, and the law firm of Pullin, Fowler, Flanagan, Brown & Poe PLLC, and pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure* and Local Rule 7.1, hereby presents their memorandum of law in support of *Defendants' Motion to Dismiss*.  In further support thereof, the Defendants state and aver as follows:

**FACTUAL BACKGROUND**

      Tanya Lardieri filed the present action on behalf of her son, "JM" ("Plaintiff"), on April 15, 2015, asserting various state and federal constitutional tort claims against the Logan County Board of Education ("Board"), Logan Middle School ("School") as well as numerous Board and School officials in their individual and official capacities (*See generally*, Pl.'s Compl.).

On[1] April 18, 2013, Plaintiff was a student at Logan Middle School. (Pl.'s Compl at 4, "Statement of Facts"). Plaintiff wore an "olive green tee shirt" displaying an image or graphic of a deadly weapon to school. (*Id*.). The shirt also exhibited the logo for the National Rifle Association and the words "PROTECT YOUR RIGHT" in all capital letters. (*Id*.) While waiting in the school lunch line, Plaintiff was stopped by school secretary Anita Gore who advised Plaintiff that the shirt violated the school dress[2] code policy. (*Id*.). Gore directed Plaintiff to turn his shirt inside out or face disciplinary action. (*Id*.). Gore then requested that teacher David Burroway view Plaintiff's shirt. (*Id).* Burroway agreed with Gore's assessment and directed Plaintiff to turn the shirt inside out or face disciplinary action. (*Id*.). Plaintiff then began debating with Burroway about the constitutionality of Burroway's and Gore's directive. (*Id* at 12, ¶ 41.).

At or about this time, teacher Howard Rockhold witnessed the events and escorted Plaintiff to the principal's office. (*Id* at 4; ¶ "Statement of Facts".). Plaintiff alleges that the "events and actions between Defendants Burroway and Gore were captured on a video cell phone by a Logan Middle School Student." (*Id* at 5; ¶ "Statement of Facts"). Plaintiff claims that such video was deleted by the student who filmed the incident when directed to do so by teacher Christopher Marcus. (*Id*.).

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). When

---

[1] Defendants restate Plaintiff's allegations, but do not admit to the veracity of the same.
[2] The relevant portion of the school's dress policy in effect at the time is identical to the dress policy adopted county-wide by the Logan County Board of Education at the time. It states in pertinent part: "Clothing and accessories that display profanity, <u>violence</u>, discriminatory messages or sexually suggestive phrases are not to be worn at school or school functions." (Pl.'s Compl at 13, ¶ 43(2)); (*See also* Pl.'s Compl. at  15; ¶ 44(f))(emphasis added).

considering a motion to dismiss a Court is first tasked with "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678; *Giacomelli*, 588 F.3d at 193. A complaint fails to state a claim if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678.

Second, the Court is to review the "well-pleaded factual allegations" to determine if they "plausibly give rise to an entitlement to relief." *Id*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*, 556 U.S. at 678. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id,* 556 U.S. at 679; *Giacomelli*, 588 F.3d at 193 (4th Cir. 2009).

## LEGAL ARGUMENT

I.   PLAINTIFF'S OFFICIAL CAPACITY CLAIMS AND CLAIMS ASSERTED AGAINST LOGAN MIDDLE SCHOOL SHOULD BE DISMISSED AS SUCH CLAIMS ARE DUPLICATIVE OF PLAINTIFF'S CLAIMS AGAINST THE BOARD

Plaintiff asserts claims against the Logan County Board of Education, members of the Board of Education in their official capacities, as well as several Logan Middle School employees in their official and individual capacities. The United States Supreme Court held in in *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) that "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." However, "[o]fficial-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id; See also Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). As a result, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166.

Here, Plaintiff's claims against the individual Defendants in their official capacity are merely claims asserted against the Board. As the Board is a named party Defendant, Plaintiff's official capacity claims as well as Plaintiff's claims against Logan Middle School are duplicative of Plaintiff's claims against the Board. Accordingly, the defendant Board members who are named solely in their official capacity and Logan Middle School should be dismissed in their entirety. Likewise, all official capacity claims asserted against the remaining individual defendants should be dismissed as a matter of law.

## II.    PLAINTIFF'S STATE FREE SPEECH AND DUE PROCESS CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED AS SAID DEFENDANTS ARE STATUTORILY IMMUNE FROM SUIT

Plaintiff asserts state constitutional tort claims against the individually named defendants arising under the free speech clause and due process clause of the state constitution in Counts Four, Five, and Eight of his *Complaint*. Specifically, Plaintiff asserts claims against Defendants Gore, Burroway, Marcus, Sutherland, and Zigmond under Count Four and Five. Count Eight asserts claims against the Board, Zigmond, and Sutherland.

The *West Virginia Governmental Tort Claims and Insurance Reform Act*, applies to state constitutional tort claims. *Hutchison v. City of Huntington*, 198 W. Va. 139, 150 (1996). It provides, in relevant part: that "[a]n employee of a political subdivision is immune from liability" unless their conduct was "manifestly outside the scope of [their] employment or official responsibilities[,]"carried out "with malicious purpose, in bad faith, or in a wanton or reckless manner" or liability is expressly imposed upon the employee by statute. W. Va. Code § 29-12A-5(b)(1)-(3).

Here, the individually named defendants are clearly immune from suit for state constitutional tort allegations under the Act. First, a county board of education is a political

4

subdivision. W.Va. Code § 29-12A-3(c). Second, Plaintiff's *Complaint* identifies the individual Defendants as employees acting within the scope of their employment for the Board.[3] (Pl.'s Compl. 8-9, ¶¶ 17-22). Third, although Plaintiff asserts that Defendants acted with deliberate indifference to Plaintiff's rights, Plaintiff has not alleged that Defendants acted in bad faith, in a willful, wanton, or reckless manner. Moreover, to the extent that Plaintiff claims that the alleged actions of the Defendants were willful or intentional, such allegations are not supported by a plausible reading of the *Complaint*. Last, there is no statute imposing liability to the individual defendants.

### III.   PLAINTIFF'S CLAIMS AGAINST  DEFENDANT CHRISTOPHER MARCUS SHOULD BE DISMISSED AS PLAINTIFF LACKS STANDING TO ASSERT SUCH CLAIMS

Plaintiff asserts constitutional tort claims against Defendant Marcus under Counts One, Two, Four, and Five. Although based on different theories, Plaintiff alleges that Defendant Marcus unconstitutionally suppressed Plaintiff's speech when Marcus allegedly ordered a student to delete a video taken of the incident. Assuming *arguendo* that Marcus's directive that a student delete a video of the incident is a suppression of speech, Plaintiff has no standing to assert such claim as it was not Plaintiff's speech that was suppressed.

"[S]tanding is defined as a party's right to make a legal claim or seek judicial enforcement of a duty or right." *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 94, 576 S.E.2d 807, 821 (2002)(Internal citation and quotations omitted). In order to properly establish standing, Plaintiff must show that he has suffered "an injury in fact" *Id; See also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  In other words, Plaintiff must show that he suffered "an invasion of a legally protected interest which is (a) concrete and particularized[.]"

---

[3] Plaintiff identifies each individual defendant as an employee of the Board acting within the scope of their employment save for Ernestine Sutherland who he states was "acting as the Logan Middle School Principal under color of law[.]" which is essentially the same as stating that she was acting in the scope of her employment.

*Lujan,* 504 U.S. at 560. "Ordinarily, one may not claim standing […] to vindicate the constitutional rights of some third party." *Singleton v. Wulff,* 428 U.S. 106, 114 (1976)(Internal citations and quotations omitted).

There is plainly no legal authority for the proposition that an individual has a free speech right to a cell phone video taken by a third party nor that Marcus's conduct results in Plaintiff not having sufficient due process notice of the fact that his conduct was prohibited by school policy. Here, if an injury was actually suffered, it is by the third party student who was forced to delete the video of the incident from his cell phone. Thus, Plaintiff has not suffered a concrete injury to his own free speech rights nor does he have standing to assert a claim for a constitutional violation on behalf of a third party.

## IV.   PLAINTIFF'S FEDERAL AND STATE FREE SPEECH CLAIMS UNDER COUNT ONE AND FOUR SHOULD BE DISMISSED AS DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

In Counts One and Four, Plaintiff asserts that his rights to free speech, expression, and association secured under the First Amendment and West Virginia Constitution were violated. The specific factual allegations in Count One only make allegations concerning the conduct of Defendants Gore, Burroway, and Marcus. However, Plaintiff apparently asserts that all named Defendants violated his First Amendment free speech rights. At the conclusion of Count One he claims that all Defendants[4] violated said right. Under Count Four, Plaintiff makes similar allegations concerning the conduct of Gore, Burroway, and Marcus. He also asserts in a conclusory manner that Sutherland violated his state free speech rights.

---

[4] To the extent that Plaintiff asserts claims against the Board for a deprivation of his rights by Board employees, the Board may only be held liable for a deprivation of Plaintiff's rights insofar the employee's actions were a result of an unconstitutional Board custom or policy. *See Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 660 (1978). Plaintiff has alleged a policy claim under the First Amendment under Count Seven. To the extent that Count One can be construed as a claim being asserted against the Board, it should be dismissed as duplicative of Plaintiff's claims under Count Seven.

As employees of a political subdivision, the individual defendants are entitled to assert the qualified immunity doctrine as a defense. The United States Supreme Court has held that "[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)(Quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Consistent with the precedent of the U.S. Supreme Court, the West Virginia Supreme Court has applied the doctrine to cases wherein an alleged deprivation of a state constitutional right has occurred. *See Hutchison*, 198 W. Va. at 148 ; *See also Robinson v. Pack*, 223 W. Va. 828, 833 (2009). Thus, qualified immunity is an immunity from suit for both state and federal constitutional violations alleged against a public official.

The scope and application of the doctrine is undoubtedly broad.  The defense protects "all but the plainly incompetent or those who knowingly violate the law." *Hutchison*, 198 W. Va. at 148 (Quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986). Likewise, "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. at 231. Simply stated: "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992); *See also City of Saint Albans v. Botkins*, 228 W. Va. 393, 402 (2011).

In determining whether or not a government official is entitled to qualified immunity, the question before the Court is two fold. The Court must determine "whether the facts that a plaintiff has alleged make out a violation of a constitutional right." *Pearson*, 555 U.S. at 232; *See also Botkins*, 228 W. Va. 393, 395. Likewise, "the court must decide whether the right at issue

was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232; *Botkins* , 228 W. Va. 393, 395. The Court need not determine either question in any particular order. *Pearson* 555 U.S. at 236. Once the defense of qualified immunity is raised, Plaintiff bears the burden of establishing both that the right was violated by and that it was clearly established at the time the violation occurred. *See Bryant v. Muth*, 994 F.2d 1082, 1086 (4th Cir. 1993).

**a. PLAINTIFF'S FIRST AMENDMENT AND STATE FREE SPEECH RIGHTS WERE NOT CLEARLY ESTABLISHED**

In order to show that a constitutional right is clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *See also W. Virginia Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751, 776 (2014). For a government official to lose the protections of qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2083, (2011)(emphasis added). In other words, "in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640. Court's should take care "not to define clearly established law at a high level of generality" as defining a right in broad terms is not sufficient to put a reasonable person on notice of the boundaries of the right. *Ashcroft,* 131 S. Ct. at 2084.

**i. FIRST AMENDMENT RIGHT TO FREE SPEECH**

Apparently, preemptively asserting that the standard enunciated by the U.S. Supreme Court in *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) governs analysis of

the speech at issue in this case, Plaintiff asserts that "[n]o substantial and material disruption" occurred as a result of Plaintiff wearing his shirt. (Pl.'s Compl. at 17, ¶ 55).

Undoubtedly, *Tinker* is the most well-known decision rendered by the U.S. Supreme Court in the realm of student free speech rights. *Tinker*, which involved students wearing black arm bands to school in protest of the Vietnam war, held that "student expression may not be suppressed unless school officials reasonably conclude that it will materially and substantially disrupt the work and discipline of the school." *Morse v. Frederick*, 551 U.S. 393, 403 (2007)(Discussing the holding of *Tinker*).

However, since the Court's 1969 ruling in *Tinker*, the Court has not applied the *Tinker* standard in any of the three subsequent student speech cases considered by the Court. In fact, in the Court's most recent opinion discussing student free speech rights, *Morse v. Frederick*, 551 U.S. 393 (2007), the Court made clear that the cases decided since *Tinker* stand for the principle that "the rule of *Tinker* is not the only basis for restricting student speech." *Morse,* 551 U.S. at 406.

*Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986) was the first case decided following *Tinker*. In *Fraser*, the Court was presented with the question of whether or not a student may be prohibited from giving a school speech with references to sexual metaphor. The Court held that school officials could lawfully restrict or prohibit "offensively lewd and indecent speech" or speech that is "highly offensive" or "highly threatening to others." *Id*, 478 U.S. at 683, 685. In so holding, the Court stated:

> Surely it is a highly appropriate function of public school education to prohibit the use of vulgar and offensive terms in public discourse. Indeed, the 'fundamental values necessary to the maintenance of a democratic political system' disfavor the use of terms of debate highly offensive or highly threatening to others.

*Fraser*, 478 U.S. at 683 (emphasis added).

Reviewing the *Fraser* decision in *Morse*, the High Court observed that *Fraser* stands for two propositions. "First, *Fraser's* holding demonstrates that the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings." *Id*, at 551 U.S. 404-05. Second, "[w]hatever approach *Fraser* employed, it certainly did not conduct the "substantial disruption" analysis prescribed by *Tinker*[.]" *Id*, 551 U.S. at 405.

The Court again departed from *Tinker* in *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 108 S. Ct. 562, 98 L. Ed. 2d 592 (1988) holding that school officials have wide discretion to restrict students speech when such speech is sponsored by the school such as a student's writings in a school newspaper. Commenting on the failure to apply the *Tinker* standard, Chief Justice Roberts stated in *Morse* that "like *Fraser*, [*Kulheimer*] confirms that the rule of *Tinker* is not the only basis for restricting student speech." *Morse*, 551 U.S. at 406. Moreover, *Kulheimer* stands for the principle "that schools may regulate some speech 'even though the government could not censor similar speech outside the school.'" *Id.*

Finally, based upon the principles derived in the *Fraser* and *Kulheimer*, the Court went on to find in *Morse* that student speech promoting illegal drug use may be prohibited. *Morse,* 551 U.S. at 403. In that opinion, the Court again departed from the *Tinker* standard and emphasized that the nature of [a student's constitutional] rights is what is appropriate for children in school." *Morse,* 551 U.S. at 406.

If any message is clear from the Supreme Court's precedents following *Tinker,* it is that *Tinker* is not the only standard that determines the constitutionality of school restrictions on free speech. Moreover, the constitutional protection of student speech must be governed by the nature of the school environment and obviously not by the constitutional standards applicable to adult speech outside of the school. Thus, judges, lawyers, and school officials are tasked with

determining whether or not the substantial disruption analysis outlined in *Tinker* must be applied before restricting student speech or whether student speech may be restricted pursuant to the more lenient standard applied in *Fraser*, *Kulheimer*, and *Morse*.

The Fourth Circuit has recognized that the beginning of a school speech analysis starts with a determination which standard applies to the facts before the Court. In *Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd.*,  354 F.3d 249 (4th Cir. 2003), which has a somewhat analogous fact pattern as the present matter, a student sought a preliminary injunction enjoining the middle school which he attended from enforcing a dress code policy prohibiting him from wearing a certain shirt with a weapon on it. The back of the shirt depicted silhouettes of individuals holding and aiming guns. The depiction was superimposed upon the acronym NRA and above the words "SHOOTING SPORTS CAMP."  *Id*, 354 F.3d at 252. The front of the shirt also showed the depiction but absent were the words "SHOOTING SPORTS CAMP." *Id.*

Recognizing that *Tinker* represented a differing standard than the subsequent high Court cases, the Court in *Newsom* began by analyzing the *Tinker*, *Fraser,* and *Kulheimer* precedents to determine the appropriate constitutional standard to apply to the student's speech at issue. In so doing, the Court found that "*Tinker* is the most relevant of the three Supreme Court cases concerning school speech." *Id,* 354 F.3d at 257. However, the Court also noted, as acknowledged by Plaintiff Newsom, that the school "could, even in the absence of a school policy, prohibit the display of violent, threatening, lewd, vulgar, indecent, or plainly offensive images and messages related to weapons under *Tinker* and *Fraser." Id.* Applying *Tinker*, the Court went on to find that there was no evidence in the record that the image of weapons in a non-threatening manner ever substantially disrupted the operations of the school on prior occasions, and thus, enjoined enforcement of the policy.

The important takeaway from *Newsom* is not that the Court applied *Tinker* and found the school's policy to be unconstitutional. Rather, it is that the Supreme Court's student speech decisions demand that different constitutional standards for speech protection apply under different circumstances. Moreover, speech concerning weapons could fall either under the *Tinker* standard or the *Fraser* standard depending on whether or not it was classified as violent. *Id* (Stating: "Newsom also correctly points out that <u>nonviolent</u> and <u>nonthreatening</u> images/messages related to weapons would fall squarely under *Tinker* 's disruption standard"). This determination of what constitutes violent and non-violent speech is obviously a fact intensive question dependent upon the specific speech at issue.

It must be kept in mind that this matter is before the Court on qualified immunity grounds, unlike *Newsom*, which concerned determination of the appropriate constitutional standard after an incident occurred.  Thus, the present question is whether or not a reasonable school official, at the time and in the situation presented, would have clearly known whether the more protective *Tinker* standard applied to Plaintiff's speech or the less protective standard enunciated in *Fraser* and *Newsom*.

As Chief Justice Roberts recognized in *Morse*, the jobs of our school administrators are "difficult" and "vitally important." *Morse*, 551 U.S. at 409. Likewise, they more often than not have "to decide to act—or not act—on the spot." *Morse* 551 U.S. at 410. Defendants, Gore and Burroway had to make a split second decision as to whether or not the Plaintiff's shirt constituted speech indicative of violence or non-violent speech. If the speech displayed on Plaintiff's shirt was indicative of violence, Gore and Burroway were permitted to restrict Plaintiff's speech without further showing. If the image is nonviolent, Defendants were required to establish that

the image was reasonably likely to cause a substantial disruption. Clearly there are gray areas in making such determinations.

Regardless of whether or not it is now found that Plaintiff's shirt was a non-violent expression and subject to a *Tinker* analysis, Gore and Burroway could have reasonably concluded at the time of the incident in question that the shirt was an expression of violence. In contrast to the shirt at issue in *Newsom,* Plaintiff's shirt displayed a deadly weapon with a call to action from others stating: "PROTECT YOUR RIGHT[.]" (Pl.'s Compl. at 4, "Statement of Facts"). The shirt at issue in *Newsom* was declarative in nature and simply stated "SHOOTING SPORTS CAMP" amongst silhouettes of individuals with guns. Given the language of Plaintiff's shirt taken in conjunction with the image displayed, the shirt could be considered to offer a message of violence and a suggestion that the deadly weapon depicted on the shirt should be used to "PROTECT YOUR RIGHT." However, even if mistaken, Defendants Gore and Burroway cannot be penalized for making a split second on the spot decision believing the shirt to be violative. In the instant action either standard arguably could have applied as what is found to be "violent" or "non-violent" has not been clearly defined.

## ii. West Virginia Constitution Article III, § 7

A review of West Virginia case law reveals that the West Virginia Supreme Court has not addressed free speech rights under the state constitution in the context of the student or school speech. The Court has on occasion referred to the *Tinker* decision to support the proposition that a student's fundamental state right to an education may be curtailed under appropriate circumstances. *See Keith D. v. Ball*, 177 W. Va. 93, 95, 350 S.E.2d 720, 722 (1986); *See also Cathe A. v. Doddridge Cnty. Bd. of Educ.,* 200 W. Va. 521, 490 S.E.2d 340 (1997). Likewise, the Court has cited to *Tinker* in *Smith v. W. Virginia State Bd. of Educ.*, 170 W. Va. 593, 598, 295

S.E.2d 680, 685 (1982) that the use of corporal punishment by the use of a paddle or whip was forbidden under the state's *in loco parentis* statute.

However, the Court has never explicitly adopted *Tinker* or any standard as the appropriate analysis governing school free speech rights under the state constitution. Thus, there is no definitively established standard by which a school official can gauge their conduct.

### b. PLAINTIFF HAS FAILED TO ALLEGE SUFFICIENT FACTS SHOWING THAT DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO FREE SPEECH

#### i. DEFENDANTS GORE AND BURROWAY

Undoubtedly, a school official has the authority to regulate and restrict student speech that can be considered violent or offensive pursuant to the Supreme Court's holding in *Fraser* and recognized by the Fourth Circuit in *Newsom*. Although *Newsom* held that a nonviolent image of a weapon was subject to analysis under *Tinker*, the present shirt can be reasonably been viewed as an expression of violent speech for the reasons stated above.

However, even assuming *Tinker* applies, the verbiage of Plaintiff's shirt could also be read by Gore and Burroway to reasonably forecast a substantial disruption as the shirt is a call to others to act. As stated by the Sixth Circuit Court of Appeals, "*Tinker* does not require school officials to wait until the horse has left the barn before closing the door. Nor does *Tinker* require certainty that disruption will occur." *Lowery v. Euverard*, 497 F.3d 584, 591-92 (6th Cir. 2007)(emphasis added). Similarly, the Ninth Circuit has held:

> *Tinker* does not require school officials to wait until disruption actually occurs before they may act. In fact, they have a duty to prevent the occurrence of disturbances. Forecasting disruption is unmistakably difficult to do. *Tinker* does not require certainty that disruption will occur, but rather the existence of facts which might reasonably lead school officials to forecast substantial disruption.

*LaVine v. Blaine Sch. Dist.*, 257 F.3d 981, 989 (9th Cir. 2001)(emphasis added).

14

With the verbiage and graphics on Plaintiff's shirt, Defendants Gore and Burroway had sufficient facts to determine that Plaintiff's shirt may cause a disruption in school activities, such as the maintenance of lunch in the school cafeteria and their actions were not unreasonable in doing so.

### ii.   DEFENDANTS ROCKHOLD AND SUTHERLAND

Obviously, in order for Plaintiff to show that said Defendants violated Plaintiff's right to free speech, Plaintiff must first show that Defendants were engaged in conduct that restricted or suppressed Plaintiff's speech. It should be noted that it was Gore and Burroway with whom Plaintiff was engaged in a disagreement concerning the application of the dress code. While Plaintiff was "engaged in an obedient debate" with Burroway, Rockhold[5] approached and escorted Plaintiff to the principal's officer where he was to "face disciplinary action." The only plausible reading of Plaintiff's *Complaint* is that Rockhold's response was to remove Plaintiff from causing a disruption in the lunch line and acting in an insubordinate manner toward Burroway and Gore. Likewise, it is only logical that Plaintiff faced disciplinary action before Principal Sutherland for the same insubordinate and disruptive behaviors witnessed by Rockhold.

However, even if the factual allegations against Rockhold and Sutherland could be read as suppressing Plaintiff's speech, it would have been clearly appropriate under *Fraser* and *Newsom* for the reasons stated in the preceding section. Further, suppression was not unconstitutional under *Tinker* as by the time, Rockhold and Sutherland became involved, Plaintiff's "obedient debate" with Burroway presented a substantial likelihood of a disruption in the orderly procession of the school lunch line.

### iii.   DEFENDANT MARCUS

---

[5] Rockhold is not specifically named by Plaintiff in Counts One or Four, however, he is named as an individual Defendant and Plaintiff presumably argues that he suppressed Plaintiff's speech.

For the reasons previously stated in section III, Plaintiff has not suffered a deprivation of his free speech rights as a result of Marcus's alleged actions.

**V.   PLAINTIFF'S FEDERAL DUE PROCESS CLAIM UNDER COUNT TWO AND STATE DUE PROCESS CLAIM UNDER COUNT FIVE SHOULD BE DISMISSED AS PLAINTIFF FAILS TO PLAUSIBLY PLEAD THE EXISTENCE OR IMPLEMENTATION OF AN UNCONSTITUTIONAL POLICY BY THE INDIVIDUAL DEFENDANTS**

Under Counts Two and Five of his Complaint, Plaintiff asserts that Defendants Sutherland and Zigmond were responsible for providing notice of school policies to students. Plaintiff further alleges that he was not provided with proper notice of the school's alleged "secret policy" prohibiting expression of support of the Second Amendment. Plaintiff thereafter alleges that Defendants Burroway, Rockhold, Gore, Marcus, Sutherland, and Zigmond ignored school policies and infringed upon Plaintiff's state and federal due process rights in apparently enforcing this "secret" policy.

In the context of criminal law it has been held that a statute must be "sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties" to comply with due process. *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964)(Quoting *Connally v. General Const. Co.*, 269 U.S. 385, 391 (1926). Moreover, "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law[.]" *Id.*

Unquestionably, in order for Plaintiff to show that he was not provided with sufficient notice of the alleged "secret" policy prohibiting the wearing of clothing depicting firearms, Plaintiff must plead sufficient facts that plausibly show that such policy in fact existed.

Here, the facts in Plaintiff's *Complaint* do not plausibly support the claim that the individual Defendants crafted and enforced a secret policy prohibiting the expression of speech

16

supportive of the Second Amendment, thus, depriving Plaintiff of notice that such expression.

Nothing is contained in Plaintiff's *Complaint* other than mere speculation that there must have

been some secret policy that prohibited Plaintiff from wearing the shirt at issue. The only

plausible reading of Plaintiff's *Complaint* is that Defendants Gore and Burroway were

interpreting and executing the published school dress code policies which prohibited displays of

violence when the incident at issue occurred.

VI. **PLAINTIFF'S FEDERAL EQUAL PROTECTION CLAIM UNDER COUNT THREE SHOULD BE DISMISSED AS PLAINTIFF HAS FAILED TO ALLEGE THAT HE WAS TREATED DIFFERENTLY FROM SIMILARLY SITUATED STUDENTS**

Plaintiff asserts under Count Three that Defendants violated Plaintiff's right to equal

protection under the Fourteenth Amendment in that Defendants failed to follow its own school

policies and applied said policies in an inconsistent fashion. Essentially, Plaintiff asserts that he

was "treated differently than other similarly situated individuals or groups." (Pl.'s Compl. at 25,

¶ 103).

"In order to survive a motion to dismiss an equal protection claim, a plaintiff must plead

sufficient facts to demonstrate plausibly that he was treated differently from others who were

similarly situated and that the unequal treatment was the result of discriminatory animus." *Equity

In Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011); *See also Morrison v.

Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). In other words, Plaintiff must show that he was

intentionally discriminated against presumably because of his pro gun rights beliefs or speech.

Plaintiff wholly fails to plead sufficient factual matter to sustain such a claim. Plaintiff

states in a conclusory manner that the Defendants failed to follow their own policies and

procedures, and thus, acted in an arbitrary and capricious manner. However, Plaintiff fails to

allege that he was treated differently from any other students at school based upon his speech or

that individuals with opposing views were treated more favorably. Plaintiff's conclusory

assertion is simply insufficient to plausibly state a claim for relief under the Fourteenth Amendment. *See Kerr v. Marshall Univ. Bd. of Governors*, No. 2:14-CV-12333, 2015 WL 1405537, at 22 (S.D.W. Va. Mar. 26, 2015).

**VII.   PLAINTIFF'S FEDERAL AND STATE FREE SPEECH CLAIMS AS WELL AS HIS FEDERAL DUE PROCESS CLAIM ASSERTED AGAINST THE BOARD SUPERINTENDENT, AND PRINCIPAL, UNDER COUNTS SIX, SEVEN, AND EIGHT SHOULD BE DISMISSED AS THE SCHOOL DRESS POLICIES ARE CONSTITUTIONAL**

Plaintiff asserts in Counts Six, Seven, and Eight of his Complaint that the dress code policies of the Logan County Board of Education and Logan County Middle School are unconstitutional in that they are vague and overbroad. Plaintiff alleges that such policies violate the First Amendment, and the Free Speech clause of the state constitution and the Due Process Clause of the Fourteenth Amendment. Plaintiff asserts such claims against the Board, former Superintendent Wilma Zigmond, and Principal Ernestine Sutherland as Plaintiff asserts that such individuals were responsible for the crafting of such policies.

At a minimum, Plaintiff's claims asserting that the policies are overbroad under the Due Process clause of the Fourteenth Amendment should be dismissed as the Supreme Court has not recognized an application of the doctrine under the Due Process clause. The U.S. Supreme Court has stated: "[W]e have not recognized an "overbreadth" doctrine outside the limited context of the First Amendment. *United States v. Salerno*, 481 U.S. 739, 745 (1987)(Citing *Schall v. Martin*, 467 U.S. 253, 269 n. 18 (1984).

In regard to Plaintiff's free speech claims, Plaintiff's challenge of the school dress policies on grounds that it they are overbroad and vague is a "facial" challenge. *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982). "A facial challenge must fail where the statute has a "plainly legitimate sweep." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 202 (2008). Under an overbreadth analysis, the court must first

"construe the challenged statute" then "determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *United States v. Williams*, 553 U.S. 285, 293 (2008); *Hoffman*, 455 U.S. at 494. Under the vagueness doctrine a law or policy is unconstitutional when it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement. *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015).

Special considerations clearly apply to interpretation of school policies when they are gauged for their constitutionality. First, the constitutional rights of students must be interpreted "in light of the special characteristics of the school environment." *Morse,* 551 U.S. 393, 405 (2007). Second, "maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures, and [the Supreme Court has] respected the value of preserving the informality of the student-teacher relationship." *Fraser*, 478 U.S. 675, 686 (1986). Third, "school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions." *Id*.

Obviously the phrase at issue in the policies is "violence" unlike the term "weapon" which was deemed overly broad in *Newsom*. Clearly, under *Fraser* and *Newsom,* a school may restrict or prohibit speech that is violent or threatening in nature. However, a school may not prohibit non-violent expressions of speech concerning weapons. Thus, to the extent that the policy prohibits violent speech alone, it is simply not overbroad as restrictions on violent speech is are not unconstitutional.

Moreover, the policies at issue are not unconstitutionally vague. First, the prohibition on speech indicative of violence is sufficiently explicit to put a reasonable student on notice that a graphic with a deadly weapon and the phrase "PROTECT YOUR RIGHT" would be prohibited.

Secondly, "[g]iven the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions[.]" *Fraser*, 478 U.S. at 686.

## CONCLUSION

In *sum*, Plaintiff's Complaint fails to state a claim for which relief may be granted as Plaintiff's factual allegations, taken as true, do not overcome the individual Defendants' immunities under state or federal law and to the extent that those immunities are not implicated, Plaintiff fails to state a claim for relief against said Defendants. Similarly, Plaintiff's factual allegations do not establish that the Board implemented and enforced an unconstitutional policy or custom. Accordingly, Plaintiff's *Complaint* should be dismissed as a matter of law.

**LOGAN COUNTY BOARD OF EDUCATION, LOGAN MIDDLE SCHOOL, PHYLLIS ADKINS, WILLIAM DAVIS, MARK MCGREW, DR. PAT WHITE, JAMES FRYE, WILMA ZIGMOND, ERNESTINE SUTHERLAND, DAVID BURROWAY, HOWARD ROCKHOLD, ANITA GORE, and CHRISTOPHER MARCUS,**

**BY COUNSEL,**

/s/Duane J. Ruggier, II
**DUANE J. RUGGIER II (WVSB #7787)**
**JACOB D. LAYNE (WVSB #11973)**

**PULLIN, FOWLER, FLANAGAN,**
**BROWN, & POE, PLLC**
JamesMark Building
901 Quarrier Street
Charleston, West Virginia 25301
304-344-0100

20

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON, WEST VIRGINIA**

**JM a minor
by and through TANYA LARDIERI
his Parent and Next Friend**

    **Plaintiff,**

**v.**               **CIVIL ACTION NO.: 2:15-cv-04822**

**LOGAN COUNTY BOARD OF EDUCATION,**
 *et al,*

    **Defendants.**

## CERTIFICATE OF SERVICE

   The undersigned counsel for Defendant does hereby certify on August 31, 2015, that a true copy of "*Memorandum of Law in Support of Defendant's Motion to Dimiss*" has been filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the below listed CM/ECF participant:

Benjamin F. White, Attorney at Law
338 Main Street
Chapmanville, West Virginia  25508
*Counsel for Plaintiff*

        /s/ Duane J. Ruggier II     
        **DUANE J. RUGGIER II (WVSB #7787)**
        **JACOB D. LAYNE (WVSB #11973)**

**PULLIN, FOWLER, FLANAGAN,
BROWN, & POE, PLLC**
JamesMark Building
901 Quarrier Street
Charleston, West Virginia 25301